# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| JOHN A. THOMAS | CIVIL ACTION NO. 05-1306-P |
| VERSUS | JUDGE WALTER |
| A. D. BATSON, ET AL. | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff John A. Thomas ("Plaintiff"), pursuant to 42 U.S.C. § 1983 [Doc. 1]. This complaint was received and filed in this Court on July 21, 2005. Plaintiff is currently incarcerated at the Louisiana State Penitentiary, but he claims his civil rights were violated by prison officials while incarcerated at the Forcht Wade Correctional Center ("FWCC") in Keithville, Louisiana. He names A.D. Batson, R. Wilkinson, Jacob Baird, Michael Jamez, Steve Taylor, Alton Hale, Howard Cole, Elizabeth Smith, Michael Grantham, Jon Simpkins, David Sanders, Janice Thomas, Sgt. Harris, Sgt. Horton, Angela Mathis, Jason Walker, Betty Lee, and Dr. Parker as defendants. On August 25, 2006, Defendants Batson, Baird, Cole, Smith, Grantham, Thomas, Harris, and Horton filed this Motion for Summary Judgment [Doc. 29]. The motion is unopposed.

## BACKGROUND

Plaintiff claims that upon his arrival at FWCC, Caddo Parish Sheriff Deputy Jason

1

Walker informed Lt. Wilkinson that he was a trouble maker and deserved special treatment because he had filed lawsuits while at Caddo Correctional Center. He claims that even though he was wheelchair bound, Walker ordered that he exit the van without assistance or be beaten. Plaintiff claims that when Walker informed Wilkinson that he needed assistance exiting the van, Wilkinson replied that he "ain't helping no black son of a bitch." He claims he was then given a wheelchair without foot pedals and ordered to his use his fully restrained hands to move the wheelchair. Plaintiff claims he was then examined by Dr. Parker. He claims Parker ordered continued use of a wheelchair and self catheterization.

Plaintiff claims Wilkinson issued him a disciplinary report for a matter which allegedly occurred months earlier when he was a pre-trial detainee. He claims Wilkinson then told him that he would be beaten before he would be transferred. He also claims Wilkinson made racial slurs. Plaintiff claims he informed Col. Miller about Wilkinson's actions. He claims that as a result, Wilkinson tore up the disciplinary report and threatened him with physical harm.

Plaintiff claims that pursuant to Wilkinson's orders, he was only allowed two hours of recreation and one phone call in a three week period. He also claims he was not allowed to catheterize himself when he needed to and as a result he suffered great pain. Plaintiff claims that on June 25, 2004, he informed Lt. Smith that Officer Williams verbally abused and threatened him and denied him medical treatment. He claims that when Smith approached the tier officers about his complaints, they joked about them.

Plaintiff claims that on June 26, 2004, Sgt. Sanders "toyed" with him for three hours and would not allow him to catheterize himself. He claims he then declared himself a medical emergency and a nurse arrived two hours later. Plaintiff claims that on June 28, 2004, Cpt. Baird directed Sgt. Thomas to file a false disciplinary report against him. He claims Baird then threatened him.

Plaintiff claims that on July 14, 2004, he spent several painful hours waiting to be catheterized. He claims Smith came to his cell, made racial slurs and ordered him to the bars to be restrained. He claims that instead of being catheterized, he was taken to the showers. He claims Smith, Sanders and Simpkins discussed the complaints he had filed. He claims Smith then slapped his head, face, neck and shoulder with her hand and radio while Sanders and Simpkins punched him. He claims Simpkins slammed him from his wheelchair to the floor and Sanders stomped his head. He claims all three officers kicked and spit on him. Plaintiff claims he lost consciousness and awoke when water was poured on him. He claims he could not see when he regained consciousness. He claims Smith and Cpt. Grantham then conspired to write a false incident report.

Plaintiff claims that on July 15, 2004, the nurse took a blood sample. He claims that as a result of the beating, his nose, penis and rectum were bleeding, he was unable to sit up and he was unresponsive and dizzy. He claims that the next shift of officers noticed his unresponsiveness and injuries and notified their supervisor. Plaintiff claims a nurse then took a urine sample. He claims he attempted to speak to the officers about the beating but had difficulty because of his injuries. Plaintiff claims Dr. Parker then

3

examined him and filed fabricated reports. He also claims Parker ordered that his wheelchair be taken because he was a problem inmate. Plaintiff claims that at a later time, he discussed the incident with Maj. Tolliver. He claims that a hearing on the disciplinary reports had to be deferred because of his injuries.

Plaintiff claims that on July 16, 2004, Baird, Smith, Hale and Cole came to his cell and ordered him to perform impossible tasks and threatened him with physical harm. He claims he was then sprayed with chemical agents while the officers made racial slurs and laughed. He claims that some time later, the officers entered his cell and dragged him across the floor and bumped him into the toilet and bars. He claims the officers then dragged him down the tier and bumped him into the walls and fixtures. He claims the officers made racial slurs and slapped him. He claims that after a nurse poured water on his head, he was returned to his cell.

Plaintiff claims that on July 17, 2004, Wilkinson and Hale made racial slurs and sprayed him with a chemical agent as Taylor, Jamez and another officer watched. He claims he was then charged with a false disciplinary report. He claims the disciplinary hearing had to be deferred because of his injuries. Plaintiff claims the administration combined his grievance and disciplinary appeals into one filing. He claims his appeals were improperly denied because he was not allowed to conduct an investigation or present exculpatory evidence. He complains he was sentenced to 70 days strip cell isolation, 16 weeks loss of phone privileges and 24 consecutive meals of food loaf.

Plaintiff complains that Warden Batson did not order proper medical treatment for

4

him and conspired with other officers to cover-up the incidents. Plaintiff complains that he was not allowed visits from his family for two months. He also complains that he was not allowed to visit with his attorney in private. As relief, Plaintiff seeks a jury trial to determine monetary damages, the termination of racist employees and corrective action taken.

On November 17, 2005, the undersigned issued a memorandum order directing Plaintiff to furnish this Court with a copy of all steps taken in the Administrative Remedy Procedure by providing copies of all ARP's filed in relation to the above allegations and copies of the responses by prison official to the same ARP's, and to answer a series of questions regarding his denial of medical care claim [Doc. 7]. In response to this order, Plaintiff filed an amended complaint detailing the alleged violations of each defendant; however, Plaintiff provided no evidence indicating any steps taken in the Administrative Remedy Procedure [Doc. 10]. Accordingly, Defendants filed a Motion for Summary Judgment based on Plaintiff's alleged failure to exhaust administrative remedies [Doc. 29].

## LAW AND ANALYSIS

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e requires plaintiff to exhaust available administrative remedies before filing a section 1983 suit and

5

precludes him from filing suit while the administrative complaint is pending. See <u>Wendell v. Asher</u>, 162 F.3d 887 (5th Cir. 1999) (unexhausted claim must be dismissed even though exhausted several days after suit was filed). The Fifth Circuit has applied the requirement to claims such as the use of excessive force, see <u>Wendell</u>, 162 F.3d at 887, and denial of medical care. See <u>Harris v. Hegmann</u>, 198 F.3d 153 (5th Cir. 1999). Available administrative remedies are deemed exhausted when the time limits for the prison's response set forth in the prison grievance procedures have expired and officials have not acted. See <u>Underwood v. Wilson</u>, 151 F.3d 292, 295 (5th Cir. 1999). Finally, prescription on the claim is tolled while the procedure is pending. See <u>Harris</u>, 198 F.3d at 153.

This is a prison condition case, exactly the type of case which can best be resolved by corrections officials without resort to judicial action. However, plaintiff has failed to provide any evidence that he has exhausted all available administrative remedies with respect to his claims as required by 42 U.S.C. §1997e(a).

Plaintiff claims that the prison administration combined his grievance (Administrative Remedy Procedure) and disciplinary appeals into one filing. However, Defendants have submitted competent, uncontested[1] summary judgment evidence in the form of an affidavit from Beth Florentine, an ARDC manager at the Forcht Wade Correctional Center whose duties include the reading, screening, and initial processing of

---

[1] Plaintiff has not submitted an opposition to Defendants Motion for Summary Judgment or Statement of Undisputed Facts.

6

ARP's lodged by inmates. After reviewing Plaintiff's claims, Florentine stated the following:

- Information regarding the administrative remedy procedure was made available to Plaintiff while housed at FWCC;

- According to procedures listed in the Administrative Remedy Procedure (ARP), the method by which this process is initiated is by a letter from the inmate to the Warden. For purpose of this process, a letter is: 1)Any form of written communication which contains the phrase "This is a request for administrative remedy; or 2) Form ARP-1 at those institutions that wish to furnish forms for commencement of this process. No request for administrative remedy shall be denied acceptance into the Administrative Remedy Procedure because it is or is not on a form; however, no letter as set forth above shall be accepted into process unless it contains the phrase, "**This is a request for administrative remedy**.";

- A review of the prison record of Plaintiff reveals that no requests for administrative remedy were received from Plaintiff regarding incidents involving verbal threats, use of excessive force, or inadequate medical treatment that allegedly occurred between June 3, 2004 and July 17, 2004;

- A request of an appeal from disciplinary rulings is not the same as a request for administrative remedy procedure;

- Completion of the disciplinary procedure process does not constitute

- completion of the administrative remedy procedure;

- A review of the prison record of Plaintiff reveals that he appealed three disciplinary rulings between June 3, 2004, and August 2, 2004;

- To the best of Florentine's knowledge, Plaintiff has not submitted ARP's regarding incidents alleged to have occurred at FWCC between June 3, 2004, and August 2, 2004;

- At no time did Florentine willfully or deliberately refuse to accept and initiate the process of a request for administrative remedy submitted by Plaintiff;

- To the best of Florentine's knowledge, Plaintiff was at no time informed that his disciplinary appeals would constitute completion of an Administrative Remedy Procedure. Defendants' Exh. 2.

Because Plaintiff has submitted no documentation, this Court must rely on the evidence provided by Defendants. After reviewing such, the undersigned concludes that there is no evidence refuting Defendants' assertion that Plaintiff has failed to exhaust his administrative remedies. According to Defendants, Plaintiff appealed three disciplinary rulings between June 3, 2004, and August 2, 2004. The required language "This is a request for administrative remedy" does not appear on any of Plaintiff's disciplinary appeals provided by Defendants. The only language in the appeals that relates to the Plaintiff's § 1983 claims is the claim that, prior to the disciplinary hearing held on July 23, 2004, he was subjected to six days of total strip cell lockdown, water and beverage

8

restriction of nine days, loss of the use of his wheelchair, six days of beatings and other physical abuse by officers and staff, twenty four consecutive food loaf meals, and five consecutive sprayings with chemical agents.[2] Although this language could be construed as an attempt by Plaintiff to grieve at least some aspects of his § 1983 claim, the fact remains that Plaintiff failed to follow the required procedures for requesting an administrative remedy.[3] Furthermore, Plaintiff has provided no evidence indicating that he was not made aware of the administrative remedy procedure.

Under current federal law, Plaintiff must have fully exhausted the administrative remedy procedure before proceeding herein. The statute provides for no exceptions[4] and, therefore, precludes any further action on Plaintiff's § 1983 claims until he has fully

---

[2] In response to these claims, the appeal decision states the following:
> The cruel and unusual punishment you refer to you in appeal are not disciplinary issues. The implementation of the food loaf program, being placed in a strip cell, and being sprayed with chemical agent are all considered management controls. Your actions required a use of force as well as being placed on the food loaf program.

[3] Even assuming that the language in Plaintiff's disciplinary appeal qualified as an ARP, the administrative remedy procedure is a two-step process requiring the inmate to first write the aforementioned letter indicating that an administrative remedy is being requested and then, if the inmate is dissatisfied with the First Step response, to appeal the decision to the Secretary of the Department of Public Safety and Corrections. Plaintiff has provided no evidence that he continued to the Second Step of the administrative review procedure nor is their any indication of such in the documentation provided by Defendants.

[4] See also Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

exhausted the administrative remedy procedure. See also Wendell v. Asher, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a §1983 suit, rather than while the action is pending..." "[t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."); Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Accordingly, **IT IS RECOMMENDED** that the Motion for Summary Judgment [Doc. 29] be **GRANTED** by **DISMISSING** this civil action **WITHOUT PREJUDICE** for failure to exhaust administrative remedies prior to filing suit.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within ten (10) days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir.1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Monroe, Louisiana, on this the 4th day of December, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE